## WHALEN v. GORDON et al.

### (Circuit Court of Appeals, Eighth Circuit. May 29, 1899.)

### No. 1,109.

1. JURISDICTION OF FEDERAL COURTS—AMENDMENT OF PLEADING TO SUPPLY JURISDICTIONAL FACTS.

Where the facts warrant the exercise of jurisdiction by a federal court, but the pleader has failed to state them properly, as by omitting to allege a proper element of damages, which reduces the amount claimed below the jurisdictional limit, the court is not deprived of the usual power to permit him to do so by amendment, by the mere fact that the amendment will constitute a jurisdictional averment.

2. LIMITATION OF ACTIONS—AMENDMENT OF PLEADING—RELATION TO BEGINNING OF ACTION.

An amendment to a petition, which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. But an amendment which introduces a new or different cause of action, and makes a new or different demand, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed; and this rule applies although the two causes of action arise out of the same transaction, and, by the practice of the state, a plaintiff is only required in his pleading to state the facts which constitute his cause of action.

3. SAME—RULE APPLIED.

Where plaintiff's original petition was for the recovery of damages for an alleged breach of warranty in a contract of sale, an amended petition alleging a rescission of such contract, and seeking to recover the purchase price paid, states a new and different cause of action, and does not relate back to the commencement of the action, for the purpose of saving the case from the bar of the statute.

4. SAME—SECOND SUIT—IOWA STATUTE.

Code Iowa 1897, § 3455, which provides that, where a plaintiff fails in an action for any cause except negligence in its prosecution, a new action, commenced within six months, shall be deemed a continuance of the first, for the purpose of the statute of limitations, does not apply where the cause of action stated in the second action is different from that alleged in the first, though based on the same transaction.

Caldwell, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

On March 11, 1892, Joseph Whalen, the plaintiff in error, sold a stallion to Charles L. Gordon and others, who were co-partners as the Tiger Horse Company, and delivered to them the following written warranty, which was signed by himself and one D. A. Lyons: "To the Tiger Horse Co., Caledonia. N. D.: This is to certify that I guaranty stallion, named Admiral, No. 3,333, to be seven years old, sure foal-getter (with proper care), and sound and true in all respects." The purchase price of this horse was $100 in cash, and $1,700 in the promissory notes of the purchasers, one half of which was payable in one year, and the other half in two years, from the date of the sale, with interest at 8 per cent. per annum. The purchasers paid the cash, and delivered their notes. On March 30, 1892, they notified Whalen that the horse failed to fulfill the warranty, and offered to return him, and on May 12, 1892, they brought an action against Whalen, Lyons, and J. T. Selby and B. E. Ingwaldson, in the district court of Traill county, in the state of North Dakota, in which they

alleged the sale; the warranty; that the horse did not comply with it; that they had offered to return him; that Selby and Ingwaldson had the purchase money and notes; and prayed that these notes might be delivered up to be canceled, and that Selby and Ingwaldson might be enjoined from delivering them to Whalen. A temporary restraining order was issued against Selby and Ingwaldson. They appeared at the hearing on this order, and stated that the notes were not in their possession, and thereupon that action was dismissed without service of any summons upon Whalen, who was a resident of the state of Iowa. On January 10, 1896, the defendants in error brought an action in the United States circuit court for the Northern district of Iowa against Joseph Whalen and D. A. Lyons, to recover damages for the breach of the written warranty in the sum of $2,500, which they averred to be the difference between the value of the horse as he would have been if the warranty had been true and his value as he was. They also sought to recover $450 for feeding and caring for him, but this claim was stricken from their petition upon motion. Whalen and Lyons answered this suit of the defendants in error that the latter had rescinded the contract of sale, tendered the horse back, demanded a return of the purchase price, and brought an action for it, and that they were thereby estopped from maintaining the suit upon the warranty. At the close of the testimony upon the trial of the issues raised by these pleadings, Whalen and Lyons moved the court to instruct the jury to return a verdict in their favor, because "it appearing from the testimony that the plaintiffs had elected to rescind said contract of purchase of said horse, they had thereby elected their remedy, and could only recover, if at all, as upon a rescission by them of said contract of purchase, the contract price paid by them for said horse, and were barred of this action, which is to recover damages, upon an affirmance by them of said contract of purchase, for an alleged breach of the warranty of said horse made during the sale thereof." The court granted this motion, but thereupon allowed the defendants in error to amend their petition "so as to seek to recover, as upon a rescission of the contract of purchase, the price paid by them for said horse." Thereupon, and on April 27, 1898, they filed an amendment to their petition, in which they alleged their offer to return the horse, and their demand for the return of the notes on March 30, 1892, and asked to recover back the purchase price of the horse ($1,800) and interest. Whalen and Lyons then moved to dismiss the action because the amount in controversy was less than $2,000, exclusive of interest and costs. To obviate this objection, the defendants in error again amended their petition by adding averments that after they offered to return the horse, and after Whalen had refused to receive him, they were compelled to feed and care for him at an expense of $400, to employ veterinary surgeons and grooms at an expense of $250, that they employed grooms and made arrangements for standing him at an expense of $300 before they learned that the warranty was false, and that when they paid their notes they amounted to $2,118. To this amended petition Whalen and Lyons answered that more than five years had elapsed after the cause of action to recover back the purchase price had accrued and before these amendments were filed, and that the action was consequently barred by the statute of limitations. After the close of the testimony on the new issues, the court instructed the jury that the defendants in error could not recover upon their amended pleadings against Lyons, because their causes of action thereunder were not on the written warranty which he signed, which contained no agreement to return the purchase price; but that they were entitled to a verdict against Whalen, notwithstanding the statute of limitations, for the purchase price they paid for the horse, and for the amount they paid for keeping him after they offered to return him. The jury found a verdict against the plaintiff in error for $2,300. The writ of error has removed the judgment upon that verdict to this court for our consideration.

H. T. Reed (Dan Shea and C. W. Reed, on the brief), for plaintiff in error.

Nathan E. Utt (B. J. Howland, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. When, at the close of the trial upon the issues presented by the original petition, the court below held that there could be no recovery, and the defendants in error filed an amended petition in which they claimed only $1,800, exclusive of interest and costs, the court refused to dismiss the case for want of jurisdiction, and permitted them to again amend their petition, by adding claims which increased the apparent amount in controversy to more than $2,000. It is insisted that these rulings were erroneous, because, when the first amendment was made, the amount in controversy became less than $2,000, so that the court lost jurisdiction, and had no power to permit an amendment which would confer it, and because the claims pleaded by the subsequent amendment were not made in good faith, but were interposed for the mere purpose of sustaining the jurisdiction of the court. When the case was commenced, the amount in controversy was $2,950, so that the court originally obtained jurisdiction of the parties and of the subject-matter. The subsequent decision, that on the issues presented by the original petition the defendants in error could not recover, did not oust the jurisdiction of the court. It still retained complete control of the case, and full power to dispose of it. The defendants in error still had the right, by objection, by argument, by motion for new trial, and by writ of error, to contest the original controversy. The allowance of the first amendment was not, therefore, erroneous, because of any want of jurisdiction of the subject-matter or of the parties. When it was made, and it disclosed that the amount claimed was only $1,800, the question of jurisdiction was presented. If this $1,800 was in fact the entire amount in controversy between the parties, it must be conceded that it was the duty of the court to dismiss the action. If, however, by mistake or inadvertence, the defendants in error had omitted to state a part of their claim, we think it was within the discretion of that court to permit them to do so by amendment, although the statement would contain a jurisdictional allegation. A portion of the additional claims which were set forth in the second amendment—that portion which charges the vendor with the expense of the care and keeping of the horse for a reasonable time after the sale was rescinded—appears upon its face to be well founded in law and in fact, and there is nothing in the record that would warrant the conclusion that it was fictitious or was interposed in bad faith. The case appears to have been one, therefore, in which there was a sufficient amount in controversy to give the court jurisdiction, but the defendants in error had failed to plead it. Where the facts warrant the exercise of the jurisdiction of the court, but the pleader has failed to state them properly, the court is not deprived of the usual power to permit him to do so by amendment by the mere fact that the amendment will constitute or contain a jurisdictional averment. Bowden v. Burnham, 8 C. C. A. 248, 59 Fed. 752, and 19 U. S. App. 448; Carnegie, Phipps & Co. v. Hulbert, 16 C. C. A. 498, 70 Fed. 209, and 36 U. S. App. 81, 97. The objections to the jurisdiction of the court below are untenable.

The cause of action to recover back the purchase price of the horse accrued on March 30, 1892, when the defendants in error repudiated

the sale, offered to return the animal to the vendor, and demanded of him the return of their cash and notes. Under the statutes of Iowa, this cause of action became barred in five years from that date, or on March 30, 1897. Code Iowa, 1897, § 3447, subd. 6. The recovery of this purchase price was first demanded, and the necessary facts to warrant its recovery were first pleaded, by the defendants in error in the action at bar in the amendment which they filed on April 27, 1898, after the court below had held that they could not recover upon their cause of action for damages for a breach of the warranty pleaded in their original petition. To this amendment the plaintiff in error promptly pleaded the bar of the statute, but the court below overruled it. This ruling presents the main question in this case. It is, did the amendment of April 27, 1898, relate back to the commencement of the original action of January 10, 1896, and thus nullify the statute of limitations, which by its terms barred the cause of action to recover back the purchase price before the amendment was made?

By the legal fiction of relation, an amendment to a petition ordinarily takes effect as of the date of the commencement of the action. But this fiction always yields to the positive provisions of statute and to the legal rights of the defendant. It is never permitted to deprive the adverse party of any legal defense to the claim presented by the amendment, such as that which arises by virtue of the provisions of the statute of limitations. A lis pendens prevents the running of the statute against a cause of action, but, where no suit is pending upon it, the statute continues to run against it. If no suit had been pending upon a given cause of action, and the statute had barred it, it would be a plain disregard or repeal of that statute to allow the cause of action to be ingrafted by amendment upon an action for another cause, which had been pending, and thus to revive by the fiction of relation that which was dead by law. In Gorman v. Judge, 27 Mich. 138, the supreme court of that state declared that "to permit the shallow fiction of relation back to the commencement of the suit, under such circumstances, to nullify the act of the legislature, would be discreditable to the judiciary." In Dudley v. Price's Adm'r, 10 B. Mon. 84, 88, the supreme court of Kentucky said: "If, during the pendency of a suit, any new matter or claim, not before asserted, is set up and relied upon, the defendant has a right to insist upon the benefit of the statute until the time that the new claim is presented, because, until that time, there was no lis pendens as to that matter between the parties." The rule which governs the reciprocal effect of the doctrine of relation and the statute of limitations upon each other in the matter of amendments to petitions— a rule which seems to be universally sustained by the authorities— may be stated in these words: An amendment to a petition which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. But an amendment which introduces a new or different cause of action, and makes a new or different demand, not before introduced or made in the pending suit,

does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed. Railway Co. v. Wyler, 158 U. S. 285, 289, 298, 15 Sup. Ct. 877; Railway Co. v. Cox, 145 U. S. 593, 601, 606, 12 Sup. Ct. 905; Sicard v. Davis, 6 Pet. 124; Van de Haar v. Van Domseler, 56 Iowa, 671, 676, 10 N. W. 227; Jacobs v. Insurance Co., 86 Iowa, 145, 53 N. W. 101; Buel v. Transfer Co., 45 Mo. 563; Scovill v. Glasner, 79 Mo. 449, 453; Crofford v. Cothran, 2 Sneed, 492; Railroad Co. v. Jones, 149 Ill. 361, 37 N. E. 247; Eylenfeldt v. Steel Co., 165 Ill. 185, 46 N. E. 266; Railroad Co. v. Campbell, 170 Ill. 163, 167, 49 N. E. 314; Christy v. Farlin, 49 Mich. 319, 13 N. W. 607; Flatley v. Railroad Co., 9 Heisk. 230, 237; Buntin v. Railway Co., 41 Fed. 744, 749; Newton v. Allis, 12 Wis. 378; Railroad Co. v. Smith, 81 Ala. 229, 1 South. 723. The rule is well illustrated in two of the cases from the supreme court cited above. In Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, the original petition was for damages for negligence "by reason of the defective condition of the cross-ties and roadbed," and the amendment was for damages for negligence "by reason of the drawhead and coupling pin not being suitable for the purpose for which they were to be used, and he being ignorant thereof, and of the defective condition of the track." The court held that the amendment only amplified the statement of the negligence of the railroad company relative to the defective condition of the great machine it was operating which was made in the original petition, and that it did not state a new or different cause of action. In the last case in which the supreme court has had occasion to consider this question (Railway Co. v. Wyler, 158 U. S. 293, 15 Sup. Ct. 877), the original petition was for negligence of the railway company in employing and retaining a fellow servant who was known to be incompetent, by means of whose incompetence and negligence a heavy iron dump was permitted to fall upon the plaintiff. The amendment counted upon the negligence of the same fellow servant and the statute of Kansas, which charges a railroad corporation with the negligence of the fellow servants of the injured employé. The original petition counted upon a liability of the railroad company under the common law; the amendment, upon a liability under the statute of Kansas. Both causes of action were based on the same transaction and resulted from the same facts. The supreme court held that the amendment stated a new cause of action, and that it was barred by the statute of limitations. The opinion of the supreme court in this case seems to meet and dispose of the contention that since Iowa and the other states which have adopted the code system of pleading and practice have abolished all forms of action, and require the petition to contain "a statement of the facts constituting the plaintiff's cause of action" only, a different rule should prevail in those states, and any cause of action arising out of the same transaction pleaded in the original petition should be permitted to be ingrafted by an amendment upon it, and allowed to relate back to the commencement of the action, although it had not been stated and no claim upon it had been made in the

original pleading. We must not forget that, while forms of action are abolished in these states, the essential natures and causes of action are not abolished. An action for a money judgment upon a promissory note, and an action to foreclose a mortgage made to secure it, may be stated under the Code in the same form, and may arise out of the same transaction, but they differ widely in their grounds, their characteristics, and their results. The forms of actions of ejectment, trespass, and assault and battery may have disappeared, but the causes and characteristics of these actions still remain. Let a stranger wrongfully enter upon a homestead of an owner, break down the door of his house, forcibly eject him from his premises, and wrongfully retain them from him. That transaction gives rise to at least three causes of action, which, under the statutes of Iowa, have different periods of limitation,—one for injuries to the person, with a limitation of two years; one for injury to the property, with a limitation of five years; and one for recovery of the real estate, with a limitation of ten years. Ought the rule to prevail in the code states that the owner of this property may set out the facts of this transaction, and demand a recovery of his real property only, keep his action upon this cause pending for nine years, and until the statute has run on his causes of action for injury to the person and to the property, and then revive them by ingrafting them upon his petition in ejectment by amendment in defiance of the statute of limitations, because they arose out of the same transaction as his cause of action to recover the land? It is as vital to the interests of society in the states which have adopted the code system of pleading as it is in the other states that these statutes of repose shall not be evaded or annulled, and this result can only be avoided by the application to the effect of amendments to pleadings of the general rule we have announced. It seems to us to have been adopted in all the states of the Union, and we think it should be steadily and uniformly maintained and applied in the federal courts.

This is evidently the view of this question which has been taken by the supreme court of the state of Iowa. In Van de Haar v. Van Domseler, 56 Iowa, 671, 676, 10 N. W. 227, the plaintiff brought an action for damages for seduction. After the statute had run against an action for rape, she amended her complaint, and pleaded a cause of action for rape. Both causes of action arose out of the same transaction, and in each pleading she stated the facts constituting her cause of action according to the Code. The only difference in the two statements was that in one she conceded, and in the other she denied, her consent. Although these causes of action arose out of the same transaction, the supreme court of Iowa held that the cause stated in the amendment was different from that stated in the original petition, that the amendment did not relate back to the commencement of the action, and that the second cause of action was barred by the statute. An extended review of the authorities seems unnecessary, because this court is bound by the decision of the supreme court of the United States, and its opinion in Railway Co. v. Wyler appears to us to end debate. In that case the cause

of action in the original petition arose out of the same transaction as did that stated in the amendment,—out of the fact that a fellow servant negligently allowed a heavy iron dump to fall upon the plaintiff. The action was brought in a code state, where forms of action were abolished. The only difference in the statement of the two causes of action was that in the one the plaintiff counted on the known incompetency of the fellow servant through whose carelessness he was injured and the common law, and in the other on the negligence of the same fellow servant and the statute of Kansas, which charges railroad companies with the negligence of such servants. The case was tried in the United States circuit court, which necessarily took judicial notice of the common law and of the statute of Kansas. The truth is that both causes of action not only arose out of the same transaction, but under the same laws, and out of the same facts. The only real difference was that in the one the plaintiff claimed to recover under the common law, and in the other under the statute of Kansas. But the supreme court held that this was a departure from law to law, and that the cause of action stated in the amendment was a new cause of action, and was barred by the statute. In delivering the opinion of the court, Mr. Justice White said, relative to the solution of the question whether or not the amended petition stated a new cause of action:

"The legal principles by which this question must be solved are those which belong to the law of departure, since the rules which govern this subject afford the true criterion by which to determine the question whether there is a new cause of action in case of an amendment. In many of the states which have adopted the code system, great latitude has been allowed in regard to amendment, but even in those states it is held that the question of what constitutes a departure in an amended pleading is nevertheless to be determined by the rules of the common law, which thus furnish the test for ascertaining whether a given amendment presents a new cause of action, although it be permissible to advance such a new cause of action by way of amendment."

At the conclusion of the discussion, he applied the general rule we have announced to the effect of an amendment under the code system upon the statute of limitations of a state which had adopted that system. He said:

"The general rule is that an amendment relates back to the filing of the original petition, so that the running of the statute of limitations against the amendment is arrested thereby. But this rule, from its very reason, applies to an amendment which does not create a new cause of action. The principle is that, as the running of the statute is interrupted by the suit and summons, so far as the cause of action then propounded is concerned, it interrupts as to all matters subsequently alleged, by way of amendment, which are part thereof. But, where the cause of action relied upon in an amendment is different from that originally asserted, the reason of the rule ceases to exist, and hence the rule no longer applies." 158 U. S. 290, 296, 15 Sup. Ct. 877.

We turn to the consideration of the remaining question in the case. Is a cause of action by a vendee to recover back the purchase price of a warranted article which fails to comply with the guaranty identical with a cause of action for damages for a breach of the warranty? In the investigation of this question it will not be unprofitable to consider for a moment the origin, foundation, and nature of the vendee's action for the return of the price, and its rela-

tion to the warranty and the action for its breach. In our examination of the authorities we have discovered no statement of these so clear, concise, forcible, and so universally quoted and approved, as that made by Chief Justice Shaw in Dorr v. Fisher, 1 Cush. 271, 273, 274. He said:

"But a warranty is a separate, independent, collateral stipulation, on the part of the vendor with the vendee, for which the sale is the consideration, for the existence or truth of some fact relating to the thing sold. It is not strictly a condition, for it neither suspends nor defeats the completion of the sale, the vesting of the thing sold in the vendeé, nor the right to the purchase money in the vendor; and, notwithstanding such warranty, or any breach of it, the vendee may hold the goods, and have a remedy for his damages by action. But, to avoid circuity of action, a warranty may be treated as a condition subsequent, at the election of the vendee, who may, upon a breach thereof, rescind the contract, and recover back the amount of his purchase money, as in case of fraud. But, if he does this, he must first return the property sold, or do everything in his power requisite to a complete restoration of the property to the vendor, and without this he cannot recover. Conner v. Henderson, 15 Mass. 319; Kimball v. Cunningham, 4 Mass. 502; Perley v. Balch, 23 Pick. 283. Such a restoration of the goods, and of all other benefits derived from the sale, is a direct condition, without a compliance with which the vendee cannot rescind the contract, and recover back the money or other property paid or delivered on the contract. But his other remedy is by an action on the warranty, or contract of the vendor, on which, if there be a breach, he will recover damages to the amount of the loss sustained by the breach, whatever that may be. If it be a warranty of the quality of goods, and the breach alleged is that the goods delivered were inferior to the goods stipulated for, the damage will ordinarily be the difference in value between the one and the other. Such an action affirms instead of disaffirming the contract of sale, leaves the property in the vendee, and gives damages for the breach of such separate, collateral contract of warranty."

In Rogers v. Hanson, 35 Iowa, 283, 287, the supreme court of that state quoted and approved this opinion, and said:

"The true rule, it seems to us, is to give the vendee his option to retain the purchased article and recover the damages sustained, or to restore it within a reasonable time, and recover the price paid." King v. Towsley, 64 Iowa, 78, 19 N. W. 859; Love v. Ross, 89 Iowa, 400, 403, 56 N. W. 528.

In Hyatt v. Boyle, 5 Gill & J. 110, 121, it is said:

"If a person sells an article (as a horse) with a warranty of soundness, which turns out to have been unsound at the time of the sale and warranty, the buyer may either keep the horse, and bring an action on the warranty, or rescind the contract by a return of the horse, or offer to return it, in a reasonable time, so that the seller is placed in statu quo, and sue for and recover back the purchase money, or so much as he has paid, in an action for money had and received."

To the same effect are Taymon v. Mitchell, 1 Md. Ch. 496, 505; Franklin v. Long, 7 Gill & J. 407, 419; Barnett v. Stanton, 2 Ala. 181, 189; Curtis v. Hannay, 3 Esp. 83; Kellogg v. Denslow, 14 Conn. 411, 421; Waring v. Mason, 18 Wend. 425, 434; Bryant v. Isburgh, 13 Gray, 607, 612; Woodle v. Whitney, 23 Wis. 55; Boothby v. Scales, 27 Wis. 626, 636; Fisk v. Tank, 12 Wis. 276, 308.

A return, or an offer to return, the property within a reasonable time after the discovery of its failure to fulfill the guaranty, is indispensable to the existence of the cause of action for a recovery back of the purchase price, and a substantial delay in making the return or the offer estops the vendee from rescinding the contract

or recovering the price. Barnett v. Stanton, 2 Ala. 189; Parker v. Palmer, 4 Barn. & Ald. 387; Grimaldi v. White, 4 Esp. 95.

There seems to be no substantial dissent from the principles and rules announced and sustained by these authorities. Thus it is seen that the action to recover back the purchase price of a warranted article which fails to comply with the guaranty, exactly like an action to recover back the purchase price of an article sold by fraud, rests upon the implied promise to return the price, which is raised by the fact that the purchaser has rightfully and seasonably rescinded the contract and returned the article he obtained. As Chief Justice Shaw says, he may "rescind the contract, and recover back the amount of his purchase money, as in case of fraud." The action in these cases is not founded upon the agreement of sale or upon any warranty which accompanies it, whether they are written or unwritten. The fact that such written contracts may form a link in the chain of evidence which sustains such actions does not constitute them the foundation of the actions. An action to recover back the purchase price of land fraudulently sold under a written agreement was held to be based upon the implied assumpsit resulting from its rescission, and not upon the written agreement of purchase, in Thomas v. Beach Co., 115 Cal. 136, 141, 46 Pac. 899. In the same way, the action to recover back the purchase price of the horse in question was not founded upon the written collateral warranty, but upon the rescission of the oral agreement of sale, and upon the implied promise to return the purchase price which the rescission and the offer of the vendees to return the horse had raised. Association v. Loomis, 142 Ill. 560, 567, 32 N. E. 424; Knight v. Railway Co., 141 Ill. 110, 115, 30 N. E. 543. It rests upon the principle that, in equity and in justice, the vendor ought to return the price because he did not furnish the article described in the sale and warranty, and the vendees have repudiated the sale, and restored the right to the horse to the vendor, and the right to the purchase money to themselves.

The question then recurs, was this cause of action to recover back the purchase price the same cause of action as that for the recovery of damages for the breach of the collateral warranty set forth in the original petition? There are three established tests that are always useful to determine the identity of two causes of action. They are: Will the same evidence support both? Will the same measure of damages govern both? And will a judgment against one bar the other? Causes of action may differ, concerning which some of these questions may be answered in the affirmative. But it can be safely said that no two causes of action can be identical concerning which all these questions must be answered in the negative. Scovill v. Glassner, 79 Mo. 448, 453; McDonald v. Jackson, 55 Iowa, 37, 7 N. W. 408. Let us apply these tests to the causes of action before us. The only evidence necessary to establish the cause of action for damages for a breach of the warranty was the warranty itself, testimony that the horse did not comply with the guaranty, and testimony as to the difference between his actual value and the value which he would have had if the warranty had been true. But this

evidence would fail utterly to support the cause of action to recover back the purchase price of the horse. Proof that the vendees had seasonably elected to rescind the sale; that, immediately after they discovered that the horse did not fulfill the warranty, they restored or offered to restore him to the vendor, and notified him that they repudiated the sale,—was indispensable to the maintenance of the cause of action pleaded in the amendment. This evidence, however, would be, and in fact was, in the trial below, fatal to the cause of action pleaded in the original petition, under the settled rule that, where one makes a choice of inconsistent remedies, he is thereafter estopped from availing himself of the one which he has renounced. Robb v. Vos, 155 U. S. 13, 43, 15 Sup. Ct. 4, and cases there cited; Stuart v. Hayden, 18 C. C. A. 618, 627, 72 Fed. 402, 411, 412, and 36 U. S. App. 462, 478. Not only was the evidence which would maintain the action for damages for the breach of the warranty insufficient to sustain the action to recover back the price, but the testimony which was indispensable to the maintenance of the latter cause of action was a complete defense to the former. The one counted on the affirmance, and the other counted on a rescission, of the sale. The one counted on a title to the horse in the vendees, and the right to the purchase money in the vendor; while the other rested on a title to the horse in the vendor, and a right to the purchase money in the vendees. The measure of damages which is applicable to the first cause of action was the difference between the actual value of the horse and the value which he would have had if the warranty had been true. That difference might have been any sum between a nominal amount and thousands of dollars. The vendees averred that it was $2,500. The measure of damages which governs the second cause of action was the purchase price of the horse ($1,800) and interest. The two causes of action are not governed by the same measure of damages. A judgment or decision that there could be no recovery on the cause of action for damages for the breach of the contract was rendered in the court below before the cause of action to recover the purchase price was presented or pleaded. It proved to be no bar to the second cause of action, and its trial proceeded to a favorable judgment notwithstanding. Try them by any or all the recognized tests, and these two causes of action display striking differences and no identity. The case, as set forth in the amendment of April 27, 1898, is not sustained by the same evidence which will maintain that pleaded in the original petition, it is not governed by the same measure of damages, and it is not barred by a judgment on the merits upon the first cause of action. It is therefore a different, new, and independent cause of action, on which no suit was pending until the amendment which propounded it was filed, and that amendment cannot be permitted to relate back to the commencement of the action.

It is claimed, however, that the bar of the statute is saved by section 3455, formerly section 2537, of the Code of Iowa, which reads:

"If after the commencement of an action, the plaintiff for any cause except negligence in its prosecution, fails therein, and a new one is brought within six

months thereafter, the second shall, for the purposes herein contemplated, be held a continuance of the first."

Conceding, but not deciding, that although in this case the first cause of action was not dismissed, the defendants in error are entitled to all the benefits of this statute which they could have derived if they had dismissed this action and commenced another when they made the amendment of April 27, 1898, we will answer this contention in the words of the supreme court of Iowa, which are authoritative with this court upon the construction of the statutes of that state. That court says:

"This section can apply only to a case when no judgment upon the merits is rendered and another suit is brought upon the same cause of action. * * * Appellant claims that this suit is upon the same cause of action, and is but a continuation of the former suit, which was commenced before the bar of the statute upon the claims in question was complete. It is clear, however, that this suit is not upon the same cause of action; for, if it were, the former judgment would be a bar to any further litigation. Section 2537 does not preserve the plaintiff's rights." McDonald v. Jackson, 55 Iowa, 37, 40, 7 N. W. 408.

The same construction is given to a like statute in the state of Kansas. Hiatt v. Auld, 11 Kan. 176.

The cause of action to recover back the purchase price of the horse was different from the cause of action for the recovery of damages for the breach of the warranty which was pleaded in the original petition. It was a new cause of action, first propounded in this suit on April 27, 1898, when the amendment of that date was filed. No suit had been pending upon it before that day. The statute of limitations had therefore run against it, and it was irrevocably barred. The causes of action pleaded in the subsequent amendment were barred for the same reason. The judgment below is reversed, and the case is remanded to the court below, with directions to grant a new trial.

CALDWELL, Circuit Judge (dissenting). It has frequently been pointed out that the technical rules of pleading relating to the doctrine of election at common law have no application under the Code. As said by Mr. Bliss, when all forms of actions were abolished, the reasons upon which the doctrine was founded passed away; and he adds:

"Had the provisions of the Code in this regard in the beginning been viewed from a scientific standpoint; had the bench and bar been able to emancipate themselves from old ideas and habits of thought,—we should no longer hear of this right of election. * * *" Bliss, Code Pl. § 154.

In Folsom v. Carli, 6 Minn. 420 (Gil. 284), Judge Flandrau, speaking for the court, said:

"While the forms of actions were in existence, a party had what was called the 'right of election of actions.' This right, in the hands of a skillful pleader, could be used to great advantage. The subject is fully treated in 1 Chit. Pl. 207, 212, 'Of Election of Actions.' But it is believed that with the abolition of the forms of action, and the substitute adopted by our statute, together with the new system of pleading, many, if not all, of these advantages are necessarily lost to the pleader."

The sound rule, under the Code, is that the party may bring any number of actions for the same cause of action, or for a cause of

action arising out of the same transaction, and that he is in no wise to be prejudiced for having done so beyond the payment of costs. He may sue, and continue to sue, until he obtains satisfaction. He can have but one satisfaction, but he can continue to sue until he obtains that.

When the plaintiffs discovered, as they believed, that they had been swindled, they made an effort to impound their negotiable notes which they had given for the horse. But the suit failed of its object. The notes had been carried beyond the jurisdiction of the court, and no service of summons was made on the defendant, and the suit abated. The plaintiffs, in all common sense and reason, lost no right by making this abortive effort to protect themselves from loss.

The present suit was brought in Iowa long before the bar of the statute of limitations had attached to the cause of action. But it is claimed that, as the charge of the court and the verdict of the jury were based entirely on the amendments to the petition, and they were filed after the bar of the statute had attached, the plea of the statute of limitations is effectual to defeat a recovery. Under the Code, a different statement of the same transaction does not constitute a different or new cause of action. When the same transaction may be stated in different forms, and each statement constitutes a good cause of action, the difference in their statement does not convert them into different causes of action. The real cause of action is the same, and it is only the statement of it that is different. This must be so in a state where "all forms of action are abolished," and the petition is only required to contain "a statement of the facts constituting the plaintiff's cause of action." The mere form of stating the transaction out of which the cause of action arose cannot alter the cause of action itself, nor does a different remedy under the Code alter the cause of action. Under the old system of pleading, particular words and phrases and particular forms were regarded as matters of substance, and determined the cause of action; and, as a result of the refinements and technicalities of that system, a difference in the statement of a cause of action was the statement of a new and different action, and therefore of a new or independent cause of action. But that doctrine does not obtain under the reformed system of pleading. From the beginning to the end of this action,—under the original petition and the amendment,—the plaintiffs refer to the written warranty as furnishing a basis for recovery. It was introduced in evidence, and must have been, to entitle the plaintiffs to recover in any form of action; for, in its absence, the rule of caveat emptor would have applied, and there could have been no recovery at all on any statement of the cause of action that could have been made independent of the warranty. The case was rightly tried upon this theory. Judge Shiras, in his charge, told the jury:

"If the contract of warranty was not kept, having exercised the right of rescission, it gives them the right to demand back the notes. They [the plaintiffs] are entitled, if the evidence satisfies you there was a breach of the warranty, they are entitled to recover, upon that branch of the case, the principal and interest they were compelled to pay."

Moreover, the contract was evidenced by the written warranty, and, if the plaintiffs had counted on any other contract, the defendant would have been quick to object to parol evidence to prove it. and the plaintiffs would have been beaten because they did not count on the written warranty.

A case directly in point, and conclusive of this case, is Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905. In that case the original petition alleged that the injury to the plaintiff's intestate, who was a freight conductor in the employ of the defendant, was caused while he was attempting to make a coupling of cars, "by reason of the defective condition of the cross-ties and of the roadbed," through the negligence of the defendant. The amended petition, which was filed after the time within which the action could have been commenced, charged that the injury was caused "by reason of the drawhead and coupling pin not being suitable for the purpose for which they were to be used, and he being ignorant of them." To this amended petition the statute of limitations was pleaded. It was argued with great force in that case that, as the plaintiff could not recover on the cause of action as stated in his original petition, but could recover on the cause of action as it was stated in his amended petition, it necessarily followed that the amendment stated a new and independent cause of action; but the **court**, speaking by the chief justice, said:

"It is true if the amended petition, which may perhaps be treated as a second count in the declaration, had brought forward a new and independent cause of action, the bar might apply to it, yet as the transaction set forth in both counts was the same, and the negligence charged in both related to defective conditions in respect to coupling cars in safety, we are not disposed, by technical construction, to hold that the second count alleged another and different negligence from the first."

And see, upon the subject of the right of a court to allow amendments and their effect, Bowden v. Burnham, 19 U. S. App. 448, 8 C. C. A. 248, and 59 Fed. 752; Smith v. Railway Co., 12 U. S. App. 426, 5 C. C. A. 557, and 56 Fed. 458; and Carnegie, Phipps & Co. v. Hulbert, 36 U. S. App. 81–97, 16 C. C. A. 498, and 70 Fed. 209.

In Cobb v. Railroad Co., 38 Iowa, 601, 626, 627, it is said:

"The filing of an amendment setting up the cause of action in another form is not the commencement of the suit; it is not the bringing of another action. The commencement of the suit, and not the filing of the petition, or any amendment thereof, terminates the running of the statute. Suppose an action be brought to recover money alleged to be due on a written contract for goods sold and delivered. After the commencement of the action, plaintiff amends his petition showing the contract to be verbal. There being no doubt that the cause of action set up in the original and amended petitions are the same, no one can claim that the commencement of the action was the filing of the amended petition, and that the statute of limitations runs to that time."

In McKeighan v. Hopkins, 19 Neb. 33, 26 N. W. 614, an action of ejectment was by amendment changed to a bill to redeem, the court saying:

"The Code abolishes the distinction between actions at law and suits in equity. If, therefore, an action at law is brought to recover a tract of land, the court certainly has the power to permit the plaintiff to amend his petition, so that he may recover the same, either at law or in equity. The right to be

enforced is the same in either case, the recovery of the land, and, so long as the identity of the cause of action is preserved, the petition may be amended by stating such facts as the plaintiff may believe to exist in his favor, to entitle him to the relief sought. The restriction in the section above quoted does not refer to the form of the remedy, but the identity of the transaction."

On the question of limitation, the court in the same case say:

"The appellee claims, however, that, even if it is conceded that the court had authority to authorize the amendment in question, still the statute of limitations would run against the cause of action until the amended petition was filed. In Martin v. Coppock, 4 Neb. 173, it was held that the amendment of a mistake in the name of the plaintiff related back to the date of the service, and this, we think, is the general rule. The cause of action is the same although the relief is sought in a different manner from that in the first petition. This, however, does not change the cause of action, and the statute of limitations ceased to run when the summons which was served on him was issued, or, if the service was constructive, at the date of the first publication of the notice."

In Lottman v. Barnett, 62 Mo. 159, the original suit was brought against the owner and an architect of a building, charging them with carelessness and negligence in the construction of the same. The suit was dismissed as to the owner, and an amended petition filed alleging that the remaining defendant (the architect) had the entire superintendence and control of the building, and that the disaster was caused by his carelessness as such architect; and it was held that the amendment did not change the plaintiff's cause of action so as to affect the running of the statute of limitations. The court, speaking by Napton, J., said:

"The defendant was liable on the first petition, as he was held to be on the second. The gist of the action was the same in both, to wit, the death of plaintiff's husband, and by the negligence of the defendant, either as proprietor or architect and superintendent of the building. It would require precisely the same evidence to support the action after the amendment as before, nor would it be an objection that the proofs might not have sustained the original petition, for the object of an amendment is to obviate this variance. Amendments are allowed expressly to save the cause from the statute of limitation, and courts have been liberal in allowing them, when the cause of action is not totally different. Maddock v. Hammet, 7 Term R. 55."

In Kuhns v. Railway Co., 76 Iowa, 67, 40 N. W. 92, the plaintiff, after the cause had once been reversed by the supreme court, was permitted to amend his petition by adding an additional averment charging a different act of negligence from those set up in the original petition. This amendment was demurred to on the ground that it was a new cause of action and was barred by the statute of limitations. The demurrer was overruled, and this ruling of the lower court was sustained by the supreme court. These cases were cited approvingly, and their doctrine applied by this court in Smith v. Railway Co., 5 C. C. A. 557, 56 Fed. 527.

In George v. Reed, 101 Mass. 378, the supreme judicial court of Massachusetts, speaking by Chief Justice Chapman, said:

"The same remark may be made as to the point that the amendment has the effect to repeal the statute of limitations. It is true that if the amendment had been refused, and the plaintiffs had been compelled to become nonsuit and commence a new action, the statute of limitations might be a bar to it. But that fact furnishes no argument against the amendment. In Davenport v. Holland, 2 Cush. 1, an amendment to a petition for review was granted more

than a year after final judgment, when a new petition would have been barred by the statute. The amendment was held to be proper. Shaw, C. J., said that it had often been held to be a good reason for granting amendments on terms, instead of nonsuiting a party, and compelling him to bring a new action, that such action would be barred by the statute of limitations. He also said that the provisions of law allowing amendments are highly remedial, and are construed most liberally to cancel error and mistake, and to advance justice and right."

The doctrine of this case is reaffirmed by the same court in Sanger v. Newton, 134 Mass. 308, where it is said:

"The fact that the three years within which an original petition could have been filed have elapsed furnishes no ground for refusing the amendment, but rather a reason why it should be allowed, as otherwise substantial justice will be defeated. George v. Reed, 101 Mass. 378."

In Van Doren v. Railroad Co., 93 Fed. 260, 271, the suit was brought in the name of Laura L. Van Doren, as administratrix of her deceased husband, and subsequently, and after the statute of limitations had run against a suit in her name as widow, she applied to the court for leave to amend the declaration by declaring as widow, instead of administratrix, of her deceased husband. The lower court refused to allow the amendment, but this ruling was reversed by the circuit court of appeals, that court saying:

"Substantial justice requires that such an amendment should be allowed, as a second suit for damages for the death of Henry Van Doren would be barred by the one-year limitation in the Pennsylvania statute."

The case of Railroad Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct 877, relied on to overturn these authorities, is not at all in point. In that case the original petition was based upon the common law of master and servant, while the amended petition changed the nature of the claim, and based the action upon a statute of Kansas giving an employé a right of action against a railroad in derogation of the common law, and fixing the period within which such action must be enforced. It is well settled that, in such case, the period allowed for the enforcement of such new right is not a statute of limitations at all, but is a limitation of the liability; in other words, that it is a constituent part of the right itself, and does not relate to the remedy. This question was fully considered by this court in Theroux's Adm'x v. Railroad Co., 27 U. S. App. 508, 12 C. C. A. 52, and 64 Fed. 84, where Judge Thayer, speaking for the court, said:

"It was said, in substance, by Mr. Chief Justice Waite in The Harrisburg, supra, that when a statute creates a new legal liability with the right to sue for its enforcement within a given period, and not afterwards, the time within which suit must be brought operates as a limitation of the liability, and not merely as a limitation of the remedy. The same thought was expressed by the supreme court of Ohio in Railway Co. v. Hine, 25 Ohio St. 629, and by the supreme court of Maryland in Eastwood v. Kennedy, 44 Md. 563. In the Ohio case it was said that a proviso contained in a statute creating a new cause of action, which limits the right to sue to two years, is a condition qualifying the right of action and not a mere limitation of the remedy. It must be accepted, therefore, as the established doctrine that, where a statute confers a new right which by the terms of the act is enforceable by suit only within a given period, the period allowed for its enforcement is a constituent part of the liability intended to be created and of the right intended to be conferred. The period prescribed for bringing suit, in such cases, is not like an ordinary statute of limitations, which merely affects the remedy."

The substantial cause of action was the same whether the plaintiff counted upon the breach of the warranty or upon a rescission of the contract for the price and keep of the horse because of the breach of the warranty. The same testimony would support a recovery under either form of the complaint, and the testimony shows that the recovery would have been substantially, if not identically, the same under either form. To deny a recovery on these facts is to refine away the plain justice and right of the case by reviving the quibbles and technicalities of common-law pleading, which were abolished in Iowa nearly 50 years ago. Judge Shiras, whose familiarity with the Iowa Code and the decisions of the supreme court of that state is well known, held that the action was not barred, and of the soundness of that conclusion there can be no doubt.'